IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOSEPH W. HUBER,

    Petitioner,    :  Case No. 3:13-cv-55

 - vs -         District Judge Walter Herbert Rice
              Magistrate Judge Michael R. Merz

NORMAN ROBINSON, Warden,
 Chillicothe Correctional Institution,

              :

    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

   This case is before the Court on Petitioner's Objections (Doc. No. 17) to the Magistrate Judge's Report and Recommendations (Doc. No. 16).  Judge Rice has recommitted the case for reconsideration in light of the Objections (Order, Doc. No. 18).

   The Petition pleads four grounds for relief.  In both his Reply and his Objections, Huber agrees that Grounds One and Two should be dismissed as without merit (Objections, Doc. No. 17, PageID 708).

**Ground Three:  Merger of Allied Offenses of Similar Import**

   In his Third Ground for Relief, Huber claims his conviction for drug possession in the instant case (Clark County Common Pleas Case No. 06-CR-674, "Huber II") is an allied offense of similar import with his convictions for drug possession in his first-tried case (Clark County Common Pleas Case No. 06-CR-509, "Hubert I").  Both cases arose from the seizure from Huber

on March 7, 2006, of a suitcase

> brimming with thousands of narcotic pain-reliever and analgesic tablets – methadone, hydrocone, oxycodone, fentanyl patches, and acetaminophen with codeine.  He was convicted on five counts of controlled substance possession in back-to-back trials [Huber I and Huber II].  The prosecutor's misidentification of the fentanyl patches in the original indictment requited the state to reindict Mr. Huber, prompting the second trial three months later.

*State v. Huber*, 2009 Ohio 1637, ¶ 1, 2009 Ohio App. LEXIS 1343 (2nd Dist. 2009).  Huber and Respondent agree that this Ground for Relief should be analyzed as arising under the Double Jeopardy Clause which, among other things, protects a person from multiple punishments for the same offense.

Petitioner's conviction in Huber I was for four counts of aggravated possession of drugs – one each for methadone, hydrocone, oxycodone, and acetaminophen with codeine -- all in violation of Ohio Revised Code § 2925.11(C)(1) which makes possession of any controlled substance in Schedule I or II (with exceptions not applicable here) aggravated possession of drugs.  Petitioner's conviction in Huber II was for possession at the same time in the same suitcase of fentanyl patches.  It is agreed by all parties that methadone, hydrocone, oxycodone, acetaminophen with codeine, and fentanyl patches come within this statute, i.e., they are either Schedule I or II controlled substances.  In Huber II the jury also found that Petitioner possessed between five and fifty times the bulk amount of fentanyl, making this offense a second degree felony under Ohio Revised Code § 2925.11(C)(1)(c).

Huber's theory of merger as he presented it to the Second District Court of Appeals was "that his conviction for possession of fentanyl merges with the other drug possession charges because all the drugs were found in the same suitcase and the offenses constitute a single act with a single intent."  *State v. Huber, supra,* ¶ 6.  The court of appeals rejected this analysis,

2

holding,

> Huber is not entitled to the merger of his convictions he requests. Huber's convictions in his first trial, which was the subject of our review in *State v. Huber*, Clark App. No. 07CA88, 2009 Ohio 1636, involved his possession of the drugs methadone, hydrocodene, oxycodeine, and acetaminophen with codeine. Huber's conviction in the second trial involved his possession of fentanyl. Each results in a violation of R.C. 2925.11. However, the fact each violation of R.C. 2925.11 requires proof of the identity of a different drug that was possessed demonstrates "that the legislature intended the possession of the different drug groups to constitute different offenses." *State v. Delfino* (1986), 22 Ohio St.3d 270, 274, 22 Ohio B. 443, 490 N.E.2d 884.

*Id.* at ¶ 7.

Huber's theory of the proper construction of the drug possession statute is set forth in his Reply:

> Ohio Revised Code 2925.11(A)(C)(1)(2) states:
>
> § 2925.11. Possession of drugs (2007)[1]
>
> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog. Whoever violates division (A) of this section is guilty of one of the following:
>
> (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marijuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows: . . .
>
> (2) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows: . . .

---

[1] The actual version of this statute in effect on March 7, 2006, is slightly different, but does not differ in any way material to Huber's argument.

> Ohio's possession of drugs statute is comprised of three sections of drug classification; Schedule I and II are one class, Schedule III, IV and V are one class, and the exception drugs (marijuana, cocaine, L.S.D. heroin, hashish and controlled substances analogs), are one class. As the statute establishes, whoever is found guilty of possessing Schedule I and/or II drugs is guilty of aggravated possession of drugs, and whoever is found guilty of possessing Schedule's III, IV, and/or V drugs, is guilty of possession of drugs. Each exception drug was charged by name; i.e., possession of heroin, possession of marijuana, possession of cocaine, possession of L.S.D., possession of hashish, and possession of a controlled substance analogs.
>
> Therefore, it is clear that the legislators intended the drug charges to be separated by schedule and not by identity of the separate drug.

(Reply, Doc. No. 12, PageID 662-663.)

In the quoted excerpt above, the Second District plainly rejected Huber's interpretation of the statute and held that possession of a particular Schedule I or II drug is a separate offense from possession, even if at the same time as in a brimming suitcase, of a different Schedule I or II drug.  In the Report, the Magistrate Judge pointed out that the Second District, in this very case, arrived at a different interpretation of Ohio Revised Code § 2925.11 (Doc. No. 16, PageID 703).

Huber insists that in deciding his case, the Second District "did not interpret the state statutes RC 2941.25 (multiple count statute) and/or RC 2925.11 (possession of drug statute) . . . . Therefore the Magistrate is incorrect in his assessment that the state courts interpreted a statute or interpreted legislative intent." (Objections, Doc. No. 17, PageID 711.)  However that is what the court of appeals said it was doing and that is what the Magistrate Judge reads the court of appeals as doing.  Huber has not suggested any other explanation of what the court of appeals was doing, much less a plausible one.

Huber asserts the Report ignores his citation of additional authority to *State v. Jackson*,

134 Ohio St. 3d 184 (2012) (Objections, Doc. No. 17, PageID 709). In *Jackson*, the Ohio Supreme Court was interpreting the trafficking in drugs law, Ohio Revised Code § 2925.03, and held an indictment was sufficient if it named the schedule of the drug trafficked as opposed to its identity. *Id.* at syllabus. In the *Jackson* case, there was only one drug involved, benzylpiperazine, a Schedule I controlled substance. Nothing in *Jackson* can be read as adopting Huber's theory about the interpretation of Ohio Revised Code § 29541.25 or Ohio Revised Code § 2925.11.

Huber also objects "to the fact that the Magistrate Judge uses *State v. Delfino*, 22 Ohio St. 3d 270 (1986), in his recommendation that this ground for relief [three] be dismissed with prejudice." (Objections, Doc. No. 17, PageID 710.) It is not the Magistrate Judge who decided *Delfino* was relevant, but the Second District Court of Appeals, which relies on and interprets *Delfino* in the excerpt quoted above. The interpretation of state law, whether statute or case law, as applied in a habeas corpus case is exclusively for the state courts. A federal habeas court may not substitute its own decision about what the state law is. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013).

The Second District Court of Appeals has definitively interpreted Ohio Revised Code §§ 2941.25 and 2925.11 as they apply to this case. Federal Double Jeopardy jurisprudence holds that offenses may be punished separately as long as they have separate elements and the state legislature intends that they be separately punished. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no

5

exception for necessarily included, or overlapping offenses.").

Ground Three is without merit and should be dismissed with prejudice.

**Ground Four: Double Jeopardy If Reindicted after Jeopardy Attached**

The separate trial on possession of the fentanyl patches occurred because the relevant count in the first indictment was dismissed and Huber was reindicted on that charge. There is no formal separate entry in the record dismissing the fentanyl charge as originally indicted, but the court of appeal expressly found that count was dismissed before trial. *State v. Huber*, 2011 Ohio 6175, ¶ 1, 2011 Ohio App. LEXIS 5070 (2nd Dist. 2011).

Huber concedes in his Objections that findings of fact, even when made at the appellate level, are presumptively correct (Objections, Doc. No. 17, PageID 708, *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). That presumption was codified in the AEDPA in 28 U.S.C. § 2254(e)(1). *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).

Huber asserts he has shown by clear and convincing evidence that the defective indictment was never dismissed (Objections, Doc. No. 17, PageID 709, citing volume 1 of the trial transcript, on file in this Court in *Huber v. Warden*, 3:11-cv-008, Doc. No. 4.) The relevant passages are as follows:

The Court: "The matter is scheduled for jury trial on six counts of drug possession. It is my understanding that the defense wishes to put some motions on before selecting a jury. PageID 516

Ms. Cushman [defense counsel]: Your Honor, Also, in the Fentanyl, Count 4, the

indictment does read that they were Fentanyl, 26 tablets of Fentanyl. There is no such thing as Fentanyl tablets according to the drug law of Ohio. They are patches. They are not tablets. It is also, further, Your Honor, they come in micrograms not milligrams. So I believe that would make count four defective also.  PageID 526

      The Court:     As to the Fentanyl patches, that motion [the defense motion to dismiss] is denied.

      Ms. Cushman:  It identifies the medicine Fentanyl patches.

      The Court:  Is that the one that indicates that is weighed out in micrograms?

      Ms. Cushman:  Yes, Your Honor.

      The Court:  Then I would have to wait to hear evidence if the State decides to go forward on that if that is micrograms or mlligrams.  . . .  Whether or not as to Count Four and Count Six, the States will make sure that they have the evidence that they have and we'll go forward on that. PageID 520

The court then proceeded to conduct voir dire, during which the following relevant comments were made:  The Court:  The Defendant stands charged with possession of four drug substances. PageID 534

      The Court:  In this particular case, the States alleges that on or about March 7, 2006, in Clark County, Ohio, the Defendant did knowingly obtain or possess the controlled substance Methadone, Roxicet Oxycodone, Endocet Oxycodone and Acetaminophen Codeine Phosphate. The State further alleges that the amount of the Methadone, Roxicet Oxycodone, Endocet Oxycodone, Acetaminophen and Codeine Phosphate was equal to or exceeded five times the bulk amount for that particular drug. PageID 541

      Mr. Driscoll [the prosecutor]:   Most of them are Methadone, Roxicet Oxycodone,

7

Endocet Oxycodone, and Acetaminophen Codeine Phosphate. PageID 543

From that point voir dire continues and the parties exercise challenges until the jury is sworn at PageID 590. While the record does not contain any expression by the prosecution that they are not going forward on the Fentanyl charge, both the judge and the prosecutor repeat the names of the four drugs to be presented and they do not include Fentanyl. Based on that record, Huber has not refuted the factual finding of the court of appeals that the Fentanyl count was dismissed before jeopardy attached.

Ground Four is without merit and should be dismissed with prejudice.

**Conclusion**

Having reconsidered the case in light of Petitioner's Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 30, 2013.

s/ <i>Michael R. Merz</i><br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

8

and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).